1  BARRY J. PORTMAN
   Federal Public Defender
2  STEVEN G. KALAR
3  Assistant Federal Public Defender
   450 Golden Gate Avenue
4  San Francisco, CA 94102
5  Telephone: (415) 436-7700

6  Counsel for Defendant Ashiegbu

7

8

9                 IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,              )   No. CR 07-0654 CRB
                                           )
13          Plaintiff,                     )
                                           )   DEFENDANT'S RESPONSE
14                                         )   TO GOVERNMENT'S
                                           )   LETTER AND EXHIBIT LIST
15     v.                                  )
                                           )
16                                         )
    LINDA ASHIEGBU and EMMANUEL            )
17  ANYANWU,                               )   **Status Conference Hearing
                                           )   Date**: Wednesday, April 23,
18          Defendants.                    )   2008 at 2:30
19  _____

20

21          By volunteering to provide a case summary and the exhibit list at the March 26,

22  2008 status conference, the government helped to sharpen issues that need resolution,

23  moot others that do not, and generally informed the Court as to the nature of the two cases

24  before it. *See Letter of AUSA Danner to the Hon. Stephen G. [sic] Breyer*, Apr. 4, 2008.

25  The government is to be commended for its filing, and AUSA Danner should encourage

26  her colleagues to adopt this enlightened approach in more cases.

27          This response to the government's filing on behalf of Linda Ashiegbu elaborates

28  on the government's summary of the case, concedes that certain defense motions have

been mooted by the April 4th filing,[1] and identifies other motions that will still need resolution when the parties return to Court.

## Discussion

Assuming without conceding that all of the government's allegations are true, this case involves two U.S. citizens helping two Nigerian family members unlawfully enter and stay in the United States. No defendant has any prior convictions. The government's April 4th letter and evidence list makes no allegations of financial gain, and contains no allegation that the Ashiegbu's helped *other* aliens besides Linda Ashiegbu's siblings. If true, the defendants' lies to ICE agents about these two siblings should be the subject of hearings in Immigration Court, might appropriately be the subject of prosecution in magistrate court, but should not be the subject of two felony trials in federal district court.

### I.    Overview of Case

The government's summary of the case in its April 4 letter was helpful the Court and the parties. In the spirit of that letter, the defense supplements that discussion with a description of the sentencing exposures of these three defendants[2] under the federal Sentencing Guidelines.[3]

---

[1] On April 4th AUSA Danner filed separate letters: one relating to *United States v. Linda Ashiegbu and Emmanuel Anyanwu*, and the second relating to *United States v. Doris Anyanwu and Andrew Ashiegbu*. In this response, all references to the "April 4th letter refer to the *Linda Ashiegbu* letter.

[2] Emmanuel Anyanwu (Ms. Linda Ashiegbu's brother and co-defendant) is a fugitive and has been since the outset of this case in 2007. There is apparently no immediate prospect of his arrest and it is unlikely that he will not be present for trial before this Court. As a fugitive, Mr. Anyanwu's guideline range may differ from those of the three other co-defendants and family members.

[3] The Guidelines are, of course, advisory. *United States v. Booker*, 543 U.S. 220 (2005). As the Ninth Circuit has explained, however, "All sentencing proceedings are to begin by determining the applicable Guidelines range. The range must be calculated correctly. In this sense, the Guidelines are 'the 'starting point and the initial benchmark,' *Kimbrough*, 128 S.Ct. at 574 (quoting *Gall*, 128 S.Ct. at 596), and are to be kept in mind throughout the process, *Gall*, 128 S.Ct. at 596-97 n. 6.   *United States v. Carty*, __ F.3d

Guideline Section 2L2.1 applies to this offense. That guideline provides the following offense level calculation:

> **Base Offense Level:** The base offense level is found at USSG § 2L2.1(a)    **11**
>
> **Specific Offense Characteristics**: Under USSG § 2L2.1(b), "If the offense was committed other than for profit . . . decrease by **3** levels.    **-3**
> _____

**Subtotal Offense Level:**    **8**

As noted above, none of these defendants have any prior convictions. They are accordingly all in Criminal History Category I.

At Criminal History Category I, Offense Level 8, the guideline range is 0-6 months *after trial* – in Zone A of the guideline table. By promulgating guidelines that establish a non-custodial, Zone A range after trial for this alleged offense, the Sentencing Commission has clearly opined on the "seriousness of the charges now brought before this Court.

As noted above, the guideline range is so low that the reduction for acceptance of responsibility is not relevant: the range is 0-6 months in Zone A before *or after* trial. Moreover, the traditional leverage that the government enjoys to force pleas well before trial – its motion for the "third point for acceptance of responsibility – is not at issue because the offense level is below sixteen. *See* USSG § 3E1.1(b). Unlike the vast majority of serious felonies typically before this Court, the guidelines in the present case are so low that the Court – and the Court alone – will determine acceptance of responsibility.

Hence, at least under the guideline analysis, a plea on April 23 will produce the identical guideline range as a plea at the pretrial conference, or a plea on the Friday before a Monday trial. The two cases now before the Court are accordingly atypical,

__, 2008 WL 763770, *4 (9th Cir. Mar. 24, 2008).

1   because they do not involve a systemic guideline incentive for an early plea of guilt, or a

2   systemic guideline disincentive from going to trial.

3       By contrast, the ramifications of felony convictions on these charges are dramatic.

4   Mr. Ashiegbu is a licensed real estate broker, and his wife Linda Ashiegbu is a licensed

5   real estate agent. The Ashiegbu's are naturalized U.S. citizens. As licensed professionals,

6   they own a small mortgage and real estate business called New Era Mortgage. They rely

7   on their licenses for their sole income, and to support their four young children who live

8   with them in their home in Hayward: Chloe Ashiegbu, 12; Stanley Ashiegbu, 10; Britney

9   Ashiegbu, 6; and Chelsea Ashiegbu, 2.

10      Felony convictions will have disastrous affects on the Ashiegbu household and

11  their ability to work and support their children.  It is likely that felony convictions would

12  cost both of these parents their professional licenses and their livelihood.

13      The plight of Ms. Doris Anyanwu is even more serious. Unlike the Ashiegbus,

14  Doris is not a United States citizen. As the Court knows, she has just had twin babies

15  (both of whom are presumably U.S. citizens). Doris Anyanwu is currently struggling with

16  immigration concerns. A *felony* conviction of the counts alleged in Ms. Anyanwu's

17  indictment could have very serious immigration consequences.

18      Caveats, of course, abound. The government has the right to seek to charge

19  additional conduct which may affect the guideline calculations. After *Booker*, *Rita*, and

20  *Gall*, this Court is empowered to sentence these defendants, upon conviction, to any

21  custodial term up to the statutory maximum term. As a broad summary of the case,

22  however, it is fair to observe that these three defendants have little to fear from trial, and

23  everything to lose by not fighting these charges.

24  **II.    The Government's April 4, 2008 Letter Mooted the Bill of Particular**
           **Motion**
25

26      As this Court predicted, the government's letter and exhibit list mooted at least one

27  defense motion. AUSA Danner's letter and exhibit list obviated any need for a Bill of

28  Particulars – at least as to Linda Ashiegbu. The government has stated its theory of

1  prosecution, identified specific alleged misstatements, and linked evidence with specific

2  counts. The defense will rely upon the government's representations in this letter, and will

3  not seek a Bill of Particulars in light of them.

4  **III.    A Suppression Motion for Mrs. Linda Ashiegbu's Statements is**

5  **Necessary**

6  The April 4 filing reveals that Mrs. Linda Ashiegbu's statements to ICE Agent

7  Brown will be a focal point of the government's case. *See Danner Letter of April 4th.* at 2

8  ¶ ("In a Mirandized interview conducted by ICE Agent Lesley Brown . . . Linda Ashiegbu

9  admitted to filling out the I-129 form . . . . ); 2 ¶ 3 ("Linda has admitted to Special Agent

10  Brown that she filled out this form . . . . ); 3 ¶ 5 ("Linda Ashiegbu admitted to Special

11  Agent Brown that she filed this tax return on Ms. May's behalf. )

12  At the status appearance on April 23, undersigned counsel will be requesting a

13  briefing schedule for a motion to suppress defendant Linda Ashiegbu's statements to ICE

14  Agent Lesley Brown.

15  **IV.    Federal Rule of Criminal Procedure 15 Depositions Are Necessary, But**

16  **Could Easily Be Mooted**

17  As predicted at the last status appearance, this 0-6 month guideline case will

18  require Rule 15 depositions in West Africa. Among the evidence identified by the

19  government in its April 4, 2008 filing is a letter allegedly written from defendant

20  Emmanuel Anyanwu to the Bishop of Owerri. *See Danner Letter, Exh. List* at 15, Bates

21  ASH1723. The key passage of this letter states that Emmanuel Anyanwu was married to

22  Chinwendu Okolo, a Nigerian woman who bore him at least one child. *Id.* This letter was

23  unsigned, was apparently taken from a computer, and it is not clear that it was ever sent.

24  Similarly, the government intends to introduce "Emails and chats from L.

25  Ashiegbu and E. Anyanwu found on computer at [Mrs. Ashiegbu's residence]. *Id.* at 44,

26  Bates ASH0405-29. At trial, the government will contend that one of those e-mails from

27  Mrs. Ashiegbu to Emmanuel Anyanwu (while still in Nigeria) instructs him on how to

28  allocate funds that she is sending to him. *See id.* at Bates ASH0412. Specifically, the e-

1  mail instructs, "$100 to Chinwendu and the baby.  *Id.*

2  Based on this evidence, the government will argue at trial that Emmanuel

3  Anyanwu was married to Chinwendu Okolo and had a child by her *before* the American

4  citizen, Kevina Mays, traveled to West Africa to meet him. The government will further

5  argue that Emmanuel lied on immigration forms when he did not report the fact that he

6  had previously been married. Finally, the government will argue that Linda Ashiegbu was

7  aware her brother's previous African marriage when she encouraged Kevina Mays to

8  travel to Nigeria and become romantically involved with Emmanuel.

9  Because the government has chosen to pursue these theories, whether Chinwendu

10  Okolo was, in fact, married to Emmanuel Anyanwu will become a central factual issue at

11  trial. There are two people who know if this marriage actually took place: Emmanuel and

12  Chinwendu. Because Emmanuel is a fugitive, a Rule 15 deposition is necessary to secure

13  Chinwendu Okolo's testimony for trial. The defense will be seeking a briefing schedule

14  on its motion for Rule 15 depositions in West Africa at the appearance on April 23rd.

15  Alternatively, the defense would enter into a stipulation with the government that

16  there will be no reference to Chinwendu Okolo or any alleged previous marriage of

17  Emmanuel Anyanwu at trial. That stipulation would moot any need for extraordinarily

18  expensive and time-consuming depositions.

19
20
### V.    Severance or *In Limine* Evidentiary Hearings May Be Necessary in Linda Ashiegbu and Emmanuel Anyanwu's Trial

21  The government seems to be inadvertently conspiring with undersigned counsel to

22  make this very simple case as complex as possible. In the final page of its April 4th letter,

23  it warns of impeachment evidence that reveals Emmanuel's earlier attempts to enter the

24  United States with the assistance of Andrew Ashiegbu:

25
26
27
28
> In addition to the applications that form the basis of the above charges, Emmanuel has tried other strategies to seek admission to the United States. For example, he has sought entry on the basis that he is Andrew Ashiegbu's son. (He is actually his brother-in-law) These previous applications may be relevant as impeachment evidence and are included in the attached list.

1    *Letter of Danner* at 4 ¶ 1.

2         In other words, the government may seek to introduce an alleged attempted

3    immigration fraud involving Andrew Ashiegbu and Emmanuel Anyanwu, in the trial of

4    Linda Ashiegbu. It is unclear if the government intends to do so if Emmanuel Anyanwu

5    remains a fugitive and Mrs. Linda Ashiegbu goes to trial next to an empty chair.

6         If, however, this impeachment evidence is admitted in the trial of Linda Ashiegbu

7    it raises a host of intriguing evidentiary concerns, including marital privileges, Rule 403

8    inquiries, and hearsay problems of exquisite complexity. In addition, the use of this

9    evidence in Linda Ashiegbu's trial will presumably require further Rule 15 depositions in

10   Nigeria, on the subject of the African offspring of Andrew Ashiegbu.

11        Counsel for Linda Ashiegbu is evaluating severance and Rule 15 motions relating

12   to the government's intended use of this evidence as impeachment material.

13        As with Chinwendu Okolo, this issue could be mooted with a stipulation from the

14   government that agrees that if Emmanuel Anyanwu is still a fugitive during Linda

15   Ashiegbu's trial this impeachment evidence would not be used.

16   **VI.    The Defense Requests an Opportunity to Copy the Binder of
             Documents Filed with the Court**

17

18        Along with its letter and exhibit list the government filed a binder of exhibits and

19   materials with the Court. It did not, however, provide a copy of that binder to the defense.

20   Undersigned counsel asked AUSA Danner to borrow her binder and make a copy; that

21   request was denied.

22        All of the materials in that binder were, presumably, previously disclosed in the

23   thousands of pages of discovery provided to the defense. It is, however, a better practice

24   to ensure that the Court and all parties are looking at an exact copy of the same materials

25   in the binder actually provided. The defense would respectfully request that the Court, or

26   the government, loan undersigned counsel its binder for an afternoon. Federal Defender

27   staff will make a copy for all three defense counsel.

28   //

**Conclusion**

The April 4 letter of AUSA Danner and the government's exhibit list for trial was a very productive way to narrow the issues for litigation. With the benefit of the government's filing, the defense will be seeking a briefing schedule for a more-limited range of motions when the parties appear for a status conference on April 23rd.


Dated: April 18, 2008

                            Respectfully submitted,

                            BARRY J. PORTMAN
                            Federal Public Defender


                            /s


                            STEVEN G. KALAR
                            Assistant Federal Public Defender