1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ALLISON MARSTON DANNER (CSBN 195046)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7144
7      FAX: (415) 436-7234
       Email: allison.danner@usdoj.gov
8
   Attorneys for the United States of America
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,          )
14                                      )    No.  CR  07-0654 CRB
            Plaintiff,                  )    No.  CR  07-0677 CRB
15                                      )
        v.                              )
16                                      )    **UNITED STATES' OPPOSITION TO**
    LINDA ASHIEGBU and                  )    **DEFENDANTS' MOTION TO**
17  EMMANUEL ANYANWU,                   )    **SUPPRESS**
                                        )
18          Defendants.                 )
                                        )
19  ——————————————————————             )    Hrg. Date:    June 11, 2008
                                        )    Time:         2:15 p.m.
20  UNITED STATES OF AMERICA,          )    Court:        The Hon. Charles Breyer
                                        )
21          Plaintiff,                  )
                                        )
22      v.                              )
                                        )
23                                      )
    DORIS AKUYOMA ANYANWU and           )
24  ANDREW IHENTUGE ASHIEGBU,          )
                                        )
25                                      )
            Defendants                  )
26  ——————————————————————             )

27

28

USA'S OPP. TO MTN. TO SUPPRESS
[CR 07-0654 CRB]
[CR 07-0677 CRB]

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      DEFENDANT WAS NOT IN CUSTODY WHEN SHE ASKED TO
            SPEAK TO THE AGENTS EXECUTING THE SEARCH WARRANT.. . . . . . . 4

    II.     DEFENDANT WAS ADVISED OF HER *MIRANDA* RIGHTS AND
            VOLUNTARILY WAIVED THOSE RIGHTS.. . . . . . . . . . . . . . . . . . . . . . . . . . 8

    III.    THIS COURT SHOULD CONDUCT AN EVIDENTIARY HEARING
            ONLY IF DEFENDANT IS WILLING TO TESTIFY.. . . . . . . . . . . . . . . . . . . . 9

    IV.    THIS COURT SHOULD INQUIRE INTO THE POTENTIAL CONFLICT
            OF INTEREST POSED BY MR. VAUGHNS'S REPRESENTATION
            OF LINDA ASHIEGBU, ANDREW ASHIEGBU, AND EMMANUEL
            ANYWANWU.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    V.     THE JUNE 6, 2007 SEARCH COMPLIED WITH RULE 41 OF THE
            FEDERAL RULES OF CRIMINAL PROCEDURE.. . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Alberni v. McDaniel,*
    458 F.3d 860 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Ayers v. Belmontes,*
    127 S. Ct. 469 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bains v. Cambra,*
    204 F.3d 968 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Beckwith v. United States,*
    425 U.S. 341 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Belmontes v. Brown,*
    414 F.3d 1094 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fitzpatrick v. McCormick,*
    869 F.2d 1247 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garcia v. Bunnell,*
    33 F.3d 1193 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Groh v. Ramirez,*
    540 U.S. 551 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Holloway v. Arkansas,*
    435 U.S. 475 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lewis v. Mayle,*
    391 F.3d 989 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Lockhart v. Terhune,*
    250 F.3d 1223 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Michigan v. Summers,*
    452 U.S. 692 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mickens v. Taylor,*
    535 U.S. 162 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES (Cont'd)

PAGE

*Miranda v. Arizona,*
    384 U.S. 436 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6

*Oregon v. Mathiason,*
    429 U.S. 492  (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sanders v. Ratelle,*
    21 F.3d 1446 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stansbury v. California,*
    511 U.S. 318 (1994) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thompson v. Keohane,*
    516 U.S. 99 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Allen,*
    831 F.2d 1487 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Crawford,*
    372 F.3d 1048 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Crespo de Llan*o,
    830 F.2d 1532 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Crews,*
    502 F.3d 1130 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Davis,*
    792 F.2d 1299 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Eide,*
    875 F.2d 1429 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Elliot,*
    463 F.3d 858 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Gregory,*
    891 F.2d 732 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Hayden,*
    260 F.3d 1066 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# TABLE OF AUTHORITIES (Cont'd)

PAGE

*United States v. Hudgens*,
798 F.2d 1234 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Jeffers*,
520 F.2d 1256 (7th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*United States v. Jennings*,
515 F.3d 980 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jorgensen*,
871 F.2d 725 (8th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Kim*,
292 F.3d 969 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Madoch*,
149 F.3d 596 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Mahan*,
190 F.3d 416 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Shi*,
__ F.3d ___, 2008 WL 1821373 (9th Cir. Apr. 24, 2008). . . . . . . . . . . . . . . 8

*United States v. Shwayder*,
312 F.3d 1109 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

## STATE CASES

*Flatt v. Superior Court*,
9 Cal. 4th 275, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (1994). . . . . . . . . . . . . . . . . . . 12

*People v. Baylis*,
139 Cal. App. 4th 1054, 43 Cal. Rptr. 559 (Cal. Ct. App. 2006). . . . . . . . . . . . . . . 12

## FEDERAL RULES

Fed. R. Crim. Pro. 41(f)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1    The United States hereby files its opposition to Linda Ashiegbu's and Andrew

2    Ashiegbu's motion to suppress statements and evidence.  Defendant Linda Ashiegbu was not in

3    custody when the challenged statements were made. Whether or not she were in custody, Linda

4    Ashiegbu was properly advised of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and

5    knowingly and voluntarily waived those rights.  For these reasons, Defendant Linda Ashiegbu's

6    motion to suppress her statements, which has been joined by Andrew Ashiegbu,[1] should be

7    denied.  Moreeover, the government served the search warrant on Linda or Andrew Ashiegbu at

8    the outset of the search.  Accordingly, defendants' motion to suppress evidence under Fed. R.

9    Crim. Pr. 41 should also be denied.  Finally, the government asks that this Court inquire into the

10   possible conflict posed by attorney Phil Vaughns's successive representation of Emmanuel

11   Anyanwu, Linda Ashiegbu, and Andrew Ashiegbu.

## FACTUAL BACKGROUND

13   On June 5, 2007, Magistrate Judge Zimmerman signed a search warrant authorizing the

14   seizure of evidence related to probable violations of immigration law from 2752 Plover Court,

15   Hayward, California, the home of Linda and Andrew Ashiegbu.  On June 6, 2007, federal agents

16   and local police officers executed the search warrant at approximately 9 a.m. (Exhibit 1,

17   Declaration of Senior Special Agent Jeffrey R. Rea ¶ 3 [hereinafter Rea Declaration]).

18   Immediately upon entry, the agents began to clear the house, which entailed locating and

19   identifying the individuals present in the house and bringing them to a central location.  (Rea

20   Declaration ¶ 6.)  Immigration and Customs Enforcement (ICE) Senior Special Agent Rea, who

21   was the "team leader" of the search, and a female employee of the Department of State

22   encountered defendant Linda Ashiegbu upstairs.  (Rea Declaration ¶ 4.)  Linda Ashiegbu, who

23   was not fully dressed, was then allowed to dress in clothing of her choosing.  (Rea Declaration ¶

---

[1]  The government notes that it is not clear why Andrew Ashiegbu has standing to seek the suppression of statements made by Linda Ashiegbu.  Andrew Ashiegbu has pointed to no statements made by him that he seeks to suppress.  Andrew Ashiegbu's motion provides no legal support for his standing.  Andrew Ashiegbu's motion, therefore, should be dismissed on standing grounds.

4.)  She was accompanied by the female State Department agent as she dressed.  (Rea Declaration ¶ 4.)  Agent Rea did not ask Linda Ashiegbu any questions.  (Rea Declaration ¶ 5.)

In conformity with standard ICE operating procedure, the adult occupants were handcuffed. Each person found in the house was brought to the sitting room while agents verified that they had located all individuals then present.  (Rea Declaration ¶ 6.)  Senior Special Agent Rea then gave either Linda or Andrew Ashiegbu a copy of the search warrant.  (Rea Declaration ¶ 6.)  After agents had cleared the house, agents took the handcuffs off of Linda Ashiegbu and her husband, Andrew Ashiegbu.  (Rea Declaration ¶ 6.)  After the house had been cleared and a copy of the warrant had been given to one of the Ashiegbus, the agents began to search the house for the items that Magistrate Judge Zimmerman had authorized them to seize.

About one hour later, ICE Senior Special Agent Lesley Brown, the case agent in charge of the investigation, arrived at 2752 Plover Court. (Exhibit 2, Declaration of Senior Special Agent Lesley Brown ¶ 5 [hereinafter Brown Declaration]).  When Agent Brown arrived, Linda Ashiegbu, Andrew Ashiegbu, and two of their children were sitting on a couch in the sitting room.  (Brown Declaration ¶ 5.)  Neither Linda Ashiegbu nor Andrew Ashiegbu was in handcuffs.  (Brown Declaration ¶ 5.)  All of the agents' and officers' guns were holstered.  (Brown Declaration ¶ 6.)  Agent Brown began to participate in the search of the residence.

Shortly after Agent Brown's arrival, Linda Ashiegbu told Agent Rea that she wanted to discuss the search warrant with him.  (Rea Declaration ¶ 7.)  Agent Rea asked Agent Brown to speak with Linda Ashiegbu.  (Brown Declaration ¶ 8.)  Agent Brown and Linda Ashiegbu sat down at the kitchen table.  (Brown Declaration ¶ 8.)  Linda Ashiegbu was not handcuffed.  (Brown Declaration ¶ 8.)  During the conversation, Linda Ashiegbu was feeding her infant baby food.  (Brown Declaration ¶ 8.)  Linda Ashiegbu's older daughter came into the kitchen several times during the interview.  (Brown Declaration ¶ 8.)

Before Agent Brown and Linda Ashiegbu began speaking, Agent Brown informed Linda Ashiegbu of her *Miranda* rights.  Among other things, Agent Brown told Linda Ashiegbu that she could stop answering Agent Brown's questions at any time.  (Brown Declaration ¶ 12.)

1    Agent Brown asked Linda Ashiegbu if she understood her *Miranda* rights, and defendant said

2    that she did.  (Brown Declaration ¶ 12.)  Agent Brown then asked Linda Ashiegbu if she wanted

3    to speak with her without an attorney present, and Linda Ashiegbu replied that she did.  (Brown

4    Declaration ¶ 12.)

5            Another ICE Agent, Special Agent Valerie Paul, was sitting at the kitchen table with

6    Agent Brown and Linda Ashiegbu while Agent Brown provided these *Miranda* warnings to

7    defendant.  (Exhibit 3, Declaration of Special Agent Valerie Paul ¶ 6 [hereinafter Paul

8    Declaration].)  Agent Paul also heard Linda Ashiegbu's waiver of those rights.  (Paul

9    Declaration ¶ 6.)  Agent Paul did not ask Linda Ashiegbu any questions.  (Brown Declaration ¶

10   10.)

11           Agent Brown did not tell Linda Ashiegbu that she must answer her questions.  (Brown

12   Declaration ¶ 14.)  Agent Brown did not threaten Linda Ashiegbu that she would take her

13   children away if Linda Ashiegbu did not answer her questions.  (Brown Declaration ¶ 17.)

14   Agent Brown never told Linda Ashiegbu that she was not free to leave.  (Brown Declaration ¶

15   9.)  Agent Brown never told Linda Ashiegbu that she was under arrest.  (Brown Declaration ¶ 8.)

16   Agent Brown did not herself believe that Linda Ashiegbu was under arrest.  (Brown Declaration

17   ¶ 8.)

18           At no point in Agent Brown's presence did Linda Ashiegbu ask to speak with a lawyer.

19   (Brown Declaration ¶ 16.)  At no point in Agent Rea's presence did Linda Ashiegbu ask to speak

20   with a lawyer.  (Rea Declaration ¶ 7.)   At no point in Agent Paul's presence did Linda

21   Ashiegbu ask to speak with a lawyer.  (Paul Declaration ¶ 8.)  When she spoke with Linda

22   Ashiegbu on June 6, 2007, Agent Brown did not know that Linda Ashiegbu had a lawyer, and

23   Linda Ashiegbu did not inform Agent Brown that she had a lawyer.  (Brown Declaration ¶ 16.)

24   Until Linda Ashiegbu filed this motion, Agent Brown did not know that Phil Vaughns, currently

25   representing Andrew Ashiegbu, had represented Linda and Andrew Ashiegbu on or before June

26   6, 2007.  (Brown Declaration ¶ 16.)  Agent Brown did know that Phil Vaughns was representing

27   Emmanuel Anyanwu, because Phil Vaughns had sent a letter the day before on behalf of

28

USA'S OPP. TO MTN. TO SUPPRESS
[CR 07-0654 CRB]
[CR 07-0677 CRB]                        3

Emmanuel Anywau.  (Letter of Phil Vaughns, June 5, 2007, attached as Exhibit A to the Brown Declaration).  That letter made no mention of Linda or Andrew Ashiegbu.

After Linda Ashiegbu told Agent Brown that she wanted to speak to her without a lawyer being present, Agent Brown began to ask Linda Ashiegbu questions about documents in the immigration file of Emmanuel Anyanwu, Linda Ashiegbu's brother.  (Brown Declaration ¶ 14.) Linda Ashiegbu answered questions about these documents.  (Brown Declaration ¶ 14.) However, Linda Ashiegbu refused to answer questions related to her sister, including her sister's name.  (Brown Declaration ¶ 14.)  Agent Brown did not press Linda Ashiegbu to answer any questions about her sister.  (Brown Declaration ¶ 14.)  Agent Brown did not tell Linda Ashiegbu to call her sister.  (Brown Declaration ¶ 14.)

Linda Ashiegbu's English was fluent and colloquial.  She did not appear to have any trouble understanding Agent Brown's questions.  (Brown Declaration ¶ 13.)  Agent Brown estimates that her discussion with Linda Ashiegbu lasted about forty-five minutes.  (Brown Declaration ¶ 18.)  The tenor of the questioning was conversational.  (Brown Declaration ¶ 8.) After the interview was concluded, Agent Brown participated in the search of the residence. (Brown Declaration ¶ 18.)  All of the agents and officers left the house around 1:20 p.m.  (Brown Declaration ¶ 19.)  No one at the house was placed under arrest.  (Brown Declaration ¶ 19.)

## ARGUMENT

**I.    DEFENDANT WAS NOT IN CUSTODY WHEN SHE ASKED TO SPEAK TO THE AGENTS EXECUTING THE SEARCH WARRANT.**

Prior to a custodial interrogation, law enforcement officers must advise a suspect of her rights as laid out in *Miranda v. Arizona*, 384 U.S. 436 (1966). *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977).  Although the Ninth Circuit has not yet reached the issue, all other circuits to consider the question have found that the burden is on defendant to show custody.  *See, e.g.*, *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (defendant has burden to establish that he was subject to custodial interrogation); *United States v. Davis,* 792 F.2d 1299, 1309 (5th Cir. 1986) (defendant has burden to establish that he was in custody).  These decisions should be

followed in light of the general rule that the burden of production and persuasion falls on the party seeking suppression.

Whether a person is in custody for *Miranda* purposes turns "simply [on] whether there [is] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam); *see also Thompson v. Keohane*, 516 U.S. 99, 112 (2005) (custody inquiry is whether "a reasonable person would have felt that he or she was at liberty to terminate the interrogation and leave"). It is uncontroverted that no one at 2752 Plover Court was formally arrested on June 6, 2007. Thus, defendant argues that she was restrained to the degree "associated with a formal arrest."

The inquiry is an objective one and asks how a reasonable person in the subject's position would regard his situation. *Stansbury*, 511 U.S. at 324. The "subjective views harbored by either the interrogating officers or the person being questioned" are generally not relevant. *Id*. at 323. The Ninth Circuit has identified the following facts as "among those likely to be relevant to deciding [the custody] question: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (*quoting United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). This list is not exhaustive. Rather, "[o]ther factors may be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Id*. In determining whether a person is in custody, a court must consider the totality of the circumstances. *Hayden,* 260 F.3d at 1066.

Common sense counsels that the fact that the Ashiegbus elected to stay during the search of their house does not mean that they were compelled to do so. As the Supreme Court has noted, "we may safely assume that most citizens–unless they intend flight to avoid arrest–would elect to remain in order to observe the search of their possessions." *Michigan v. Summers,* 452 U.S. 692, 701 (1981).

1    Far from leading to a conclusion that Linda Ashiegbu was in custody on June 6, 2007, the

2    totality of the circumstances indicates that Linda Ashiegbu was voluntarily present during the

3    conversation with Agent Brown and thus not subject to custodial interrogation. In *Miranda,* the

4    Supreme Court defined "custodial interrogation" as "questioning *initiated by law enforcement*

5    *officers* after a person has been taken into custody or otherwise deprived of his freedom of action

6    in any significant way." *Miranda,* 384 U.S. at 444 (emphasis supplied). It is uncontroverted that

7    Linda Ashiegbu initiated the contact with Agent Brown by asking to speak to agents about the

8    search. This fact alone means that her conversation with Agent Brown did not amount to

9    custodial interrogation.

10    Further, that the conversation took place at Linda Ashiegbu home–a place familiar to

11    her–also militates against a finding of custody. *Beckwith v. United States,* 425 U.S. 341, 348

12    (1976) (finding questioning by IRS agents that took place at defendant's home to be

13    noncustodial); *United States v. Gregory,* 891 F.2d 732, 735 (9th Cir. 1989) (upholding district

14    court's finding that defendant was not in custody because, among other factors, he was

15    interviewed at home and in the presence of his wife). Here, Linda Ashiegbu was interviewed in

16    her kitchen while feeding her baby. The kitchen was open to the rest of the house, and her older

17    daughter freely entered and left the room.

18    There is no evidence that any of the agents ever told Linda Ashiegbu or her husband that

19    they were not free to leave. *See Gregory,* 891 F.2d at 735 (noting, in reaching its conclusion that

20    defendant was not in custody, that the agents "made no suggestion that defendant would not be

21    free to leave"). To be sure, Linda Ashiegbu and her husband were handcuffed during the initial

22    clearing of the house. However, these handcuffs were removed as soon as the agents had

23    accomplished this task. That some of the agents may have drawn their guns briefly at the outset

24    of the search does not render the entire encounter between Linda Ashiegbu and the agents

25    custodial.

26    As the Ninth Circuit has counseled, "the in custody determination requires us to examine

27    the circumstances *surrounding the interrogation*." *Crawford,* 372 F.3d at 1059-60 (emphasis in

28

USA'S OPP. TO MTN. TO SUPPRESS
[CR 07-0654 CRB]
[CR 07-0677 CRB]                          6

1   original).  Here, the conversation between Linda Ashiegbu and Agent Brown took place after all

2   guns and handcuffs had been put away.  Thus, the potential for coercion posed by these objects

3   expired well before the time that Linda Ashiegbu initiated the conversation with Agent Brown.

4   *See Gregory,* 891 F.2d at 735 (finding defendant was not in custody because "although the

5   agents initially drew their guns, they returned them to their holsters prior to the interview");

6   *United States v. Crawford*, 372 F.3d 1048, 1059-60 (9th Cir. 2004) (rejecting defendant's claim

7   that because he had been detained at the house and the officers had entered his bedroom with

8   guns drawn, he did not feel free to reject their request to go to the FBI offices or to leave once

9   there) (en banc).

10        The duration of the conversation between Agent Brown and Linda Ashiegbu also

11  militates against a finding of custody.  Agent Brown estimates that she and defendant spoke for

12  about forty-five minutes.  The Ninth Circuit has found that an interrogation of this length

13  suggests that the interview was non-custodial.  *United States v. Hudgens,* 798 F.2d 1234, 1237

14  (9th Cir. 1986) (finding "the fact that interrogation lasted only 45 minutes also supports the

15  district court's determination that the statement was not the product of a custodial

16  interrogation.")  Indeed, courts have upheld much longer interrogations as non-custodial.  *Bains*

17  *v. Cambra,* 204 F.3d 968-69 (9th Cir. 2000) (no custody where defendant was questioned at

18  police station by four officers for four hours before *Miranda* warnings given); *United States v.*

19  *Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (no custody where interview lasted "only" an hour-

20  and-a-half);

21        Finally, the relaxed nature of the conversation between Agent Brown and Linda

22  Ashiegbu, evidenced by her daughter walking in and out of the room and by Linda Ashiegbu

23  feeding her baby, supports the non-custodial nature of the encounter.  *United States v. Eide,* 875

24  F.2d 1429, 1437 (9th Cir. 1989) (affirming district court's finding *Miranda* warnings

25  unnecessary "particularly because the FBI interviewed [defendant] at his home, and also because

26  the meeting was amicable").

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    DEFENDANT WAS ADVISED OF HER *MIRANDA* RIGHTS AND VOLUNTARILY WAIVED THOSE RIGHTS.

Even were this Court to find that Linda Ashiegbu was in custody when she initiated the conversation with Agent Brown, this Court should not suppress the statements made by Linda Ashiegbu. Out of an abundance of caution, Agent Brown did provide *Miranda* warnings to Linda Ashiegbu. Defendant then voluntarily waived those rights.

A defendant may waive her right against self-incrimination and speak with the police as long as that waiver is made voluntarily, knowingly, and intelligently. *United States v. Jennings,* 515 F.3d 980, 986 (9th Cir. 2008). "A waiver is voluntary if, under the totality of the circumstances, the confession is the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Shi,* __ F.3d ___, 2008 WL 1821373 at *9 (9th Cir. Apr. 24, 2008). In other words, "coercive police activity is a necessary predicate to finding a confession involuntary." *Id.*

Courts judge the validity of a waiver by examining the totality of the circumstances surrounding that waiver. *United States v. Crews,* 502 F.3d 1130, 1140 (9th Cir. 2008). The relevant factors include the defendant's mental capacity, whether there was a written waiver, whether the defendant's rights were individually explained to him, whether those rights were described in a native tongue or through a translator, whether the defendant appeared to understand his rights, and whether the defendant had prior experience with the criminal justice system. *Id.*

Here, the relevant factors indicate that Linda Ashiegbu voluntarily, knowingly and intelligently waiver her right against self-incrimination. Agent Brown explained Linda Ashiegbu's rights to her in detail in a language which she speaks fluently. Linda Ashiegbu is, by profession, a mortgage broker who owns her own business-there is no evidence that she lacks any mental capacity. Linda Ashiegbu told Agent Brown that she understood her rights and wished to speak to her without a lawyer being present.

It is true that Linda Ashiegbu did not sign a written waiver of her rights against self-incrimination. But this factor is not dispositive. In *Crews,* for example, the Ninth Circuit found

that, even though there was no written waiver in that case, the totality of the circumstances

showed that Linda Ashiegbu knowingly and voluntarily waived his rights. *Crews,* 502 F.3d at

1140.

Most importantly, Agent Brown brought no coercion to bear on Linda Ashiegbu. The

same reasons that demonstrate that Linda Ashiegbu was not in custody also support the

conclusion that she knowingly, voluntarily, and intelligently waived her right against self-

incrimination. Linda Ashiegbu asked to speak with an agent. Linda Ashiegbu was not

handcuffed but was instead sitting in her own kitchen feeding her baby. The doors to the kitchen

were open. Agent Brown's gun was holstered. The atmosphere of the questions were relaxed

and casual. Under these circumstances, it is clear that Linda Ashiegbu was not pressured into

waiving her rights and that she understood her rights and the consequences of their waiver.

**III.     THIS COURT SHOULD CONDUCT AN EVIDENTIARY HEARING ONLY IF
           THIS COURT FINDS THAT DEFENDANT WAS IN CUSTODY AND
           DEFENDANT IS WILLING TO TESTIFY.**

There are material factual disputes between the accounts provided by Agent Rea, Agent

Brown, Agent Paul and Linda Ashiegbu. For example, Linda Ashiegbu claims that she asked the

agents "directly" for a lawyer and repeated that request throughout the morning. (Ashiegbu

Declaration ¶¶ 22; 25.) However, none of the special agents present–including the agent in

charge of the search and the case agent–heard defendant ask for a lawyer. Linda Ashiegbu stated

that she asked to speak to Phil Vaughns, who was her lawyer, and she was permitted to call him

by Agent Brown later in the morning. (Ashiegbu Declaration ¶¶ 22; 46.) Agent Brown was not

aware, until the filing of this motion, either that Phil Vaughns was representing defendant on

June 6, 2007, or that Linda Ashiegbu had called him that day. Senior Special Agent Brown and

Special Agent Paul both remember clearly that Agent Brown did provide *Miranda* warnings to

defendant, and that Linda Ashiegbu waived those rights. Linda Ashiegbu, by contrast, states that

she received no *Miranda* warnings. (Ashiegbu Declaration ¶ 39.) Further, Linda Ashiegbu

claims she did not receive a copy of the search warrant. (Ashiegbu Declaration ¶ 48.) Senior

Special Agent Rea remembers that he gave one to her or her husband before agents began

1  searching the house for items authorized by the warrant. Further, a copy of that warrant appears

2  on the coffee table in the sitting room in the photograph taken at 9:20 a.m. that morning. (Rea

3  Declaration ¶ 7.) Linda Ashiegbu's Declaration states that her children "started to cry and would

4  not stop." (Ashiegbu Declaration ¶ 21.) The photograph taken at 9:20 a.m. shows that the

5  children were not crying at this time.

6        There are undeniable factual conflicts between Linda Ashiegbu's recollection and that of

7  the agents present during the search, which are themselves consistent in all material respects.

8  However, these conflicts can only be evaluated by an assessment by this Court of the credibility

9  of the declarants on the stand. If Linda Ashiegbu does not testify, then an evidentiary hearing

10  will not advance this Court's resolution of the conflicts between the agents' accounts and

11  defendant's. In *United States v. Madoch,* 149 F.3d 596 (7th Cir. 1998), a case relied upon

12  heavily by Linda Ashiegbu, the Seventh Circuit reversed a district court's order denying a

13  motion to suppress in part because the court did not order an evidentiary hearing. The Seventh

14  Circuit stated, "without an evidentiary hearing to consider credibility and demeanor, the district

15  court in this case could not properly resolve the conflict between [defendant's] account of the

16  agents' behavior in her home and that of the government." *Id.* at 601. The government,

17  therefore, agrees with Linda Ashiegbu that an evidentiary hearing is warranted if this Court will

18  have the opportunity to make just such an evaluation of credibility and demeanor. If Linda

19  Ashiegbu declines to testify, however, such a hearing will not serve either of these purposes and

20  the government would oppose an evidentiary hearing under that circumstance.

21

22  **IV.    THIS COURT SHOULD INQUIRE INTO THE POTENTIAL CONFLICT OF INTEREST POSED BY MR. VAUGHNS'S REPRESENTATION OF LINDA ASHIEGBU, ANDREW ASHIEGBU, AND EMMANUEL ANYWANWU.**

23

24        The government asks the Court to conduct an inquiry into whether Mr. Vaughns,

25  currently representing Andrew Ashiegbu, has a potential conflict of interest that could adversely

26  affect his representation of Andrew Ashiegbu. If Mr. Ashiegbu wishes to waive the potential

27  conflict, the government asks that the Court personally inquire of the defendant to ensure that the

28  waiver is knowing, voluntary, and intelligent. The government respectfully submits that the

1    Court should conduct its inquiry at the hearing on this motion on June 11, 2008.

2        Andrew Ashiegbu's "Sixth Amendment right to counsel includes a correlative right to

3    representation free of conflicts of interest." *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004).

4    "A conflict of interest can arise in cases of simultaneous or successive representation." *United

5    States v. Elliot*, 463 F.3d 858, 865 (9th Cir. 2006); *see Fitzpatrick v. McCormick*, 869 F.2d 1247,

6    1252 (9th Cir. 1989) ("Conflicts of interest can arise both in cases of simultaneous representation

7    and successive representation, though it generally is more difficult to demonstrate an actual

8    conflict resulting from successive representation."). In cases of successive representation,

9    "'conflicts of interest may arise if the cases are substantially related or if the attorney reveals

10   privileged communications of the former client or otherwise divides his loyalties.'" *United

11   States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (quoting *Fitzpatrick*, 869 F.2d at 1247).

12   Successive representation raises the risk "'that the attorney who has obtained privileged

13   information from the former client may fail to conduct a rigorous cross-examination [of that

14   client] for fear of misusing that confidential information.'" *Shwayder*, 312 F.3d at 1118 (quoting

15   *Fitzpatrick*, 869 F.2d at 1252); *see United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975

16   (Stevens, J.) (successive representation raises danger that counsel may "overcompensate and fail

17   to cross-examine fully for fear of misusing his confidential information"). As the Supreme Court

18   has explained in the context of joint (as opposed to successive) representation, "the evil…is in

19   what the advocate finds himself compelled to *refrain* from doing." *Holloway v. Arkansas*, 435

20   U.S. 475, 490 (1978); *see Lewis*, 391 F.3d at 997 (quoting *Holloway* in successive representation

21   case). In inquiring into whether a conflict exists, the Court "cannot be governed solely by the

22   perceptions of the attorney." *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994).

23       The California Rules of Professional Conduct also impose constraints on an attorney's

24   ability to engage in successive representation. Rule of Professional Conduct 3-310(B) provides

25   as follows:

26       A member shall not accept or continue representation of a client without providing
         written disclosure to the client where:

27                                              * * *

28

USA'S OPP. TO MTN. TO SUPPRESS
[CR 07-0654 CRB]
[CR 07-0677 CRB]                        11

(2) The member knows or reasonably should know that:

     (a) the member previously had a legal…relationship with a party or witness in the same matter; and

     (b) the previous relationship would substantially affect the member's representation.

Rule of Professional Conduct 3-310(E) provides, "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Under these rules, the informed written consent of the current client is necessary when the attorney has obtained material confidential information from the former client. *See* Rule 3-310, Discussion; *People v. Baylis*, 139 Cal. App. 4th 1054, 1065, 43 Cal. Rptr. 559, 568 (Cal. Ct. App. 2006) ("In the successive representation context, the chief fiduciary value jeopardized is that of client *confidentiality*, not loyalty.") (internal quotation marks and citation omitted). Unlike federal courts interpreting the Sixth Amendment, California courts interpreting Rule 3-310(E) presume that an attorney learned relevant confidential information in the course of a prior representation that is substantially related to the current representation. *See id.* at 1066, 43 Cal. Rptr. at 568 ("'Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed.*'") (quoting *Flatt v. Superior Court*, 9 Cal. 4th 275, 283, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (1994)).

"A defendant may waive his right to the assistance of an attorney who is unhindered by conflicts." *Lewis*, 391 F.3d at 996; *see Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006) (trial court may eliminate consequence of conflict "through seeking a waiver" among other steps). To be valid, that waiver "must be voluntary, knowing, and intelligent, such that the defendant is sufficiently informed of the consequences of his choice." *Lewis*, 391 F.3d at 996. In particular, to execute a valid waiver, a defendant must understand "the specific ramifications"

of forgoing conflict-free counsel, *Lockhart v. Terhune*, 250 F.3d 1223, 1233 (9th Cir. 2001), and must be told that his attorney owes a continuing duty of loyalty to his former client. *Lewis*, 391 F.3d at 996. Although a defendant need not know "that particular dilemmas will present themselves," he must understand "all the risks that are likely to develop." *United States v. Allen*, 831 F.2d 1487, 1500 (9th Cir. 1987); *see Shwayder*, 312 F.3d at 1117 (waiver must take into account "the actual scope of the case as it proceed[s]"). A trial court must ensure that the waiver is fully intelligent and voluntary because the court of appeals will "indulge every reasonable presumption against" a waiver of the right to conflict-free counsel. *Lewis*, 391 F.3d at 997; *accord Garcia v. Bunnell*, 33 F.3d 1193, 1197 (9th Cir. 1994).

"Trial courts have a duty of inquiry whenever they know or reasonably should know that a particular conflict exists." *Garcia v. Bunnell*, 33 F.3d at 1199. Ninth Circuit precedent suggests, moreover, that the trial court must personally question the defendant to ensure that he understands the "possible adverse impact" of the conflict on his counsel. *Alberni*, 458 F.3d at 871. For example, in *Lewis v. Mayle*, the defendant and his attorney's former client executed extensive written waivers of the potential conflict raised by the attorney's successive representation of the defendant and a prosecution witness. The Ninth Circuit found the waiver invalid, in part because the court had only a "cursory" discussion with the defendant about the consequences of the waiver. 391 F.3d at 996-97. Similarly, in *Belmontes v. Brown*, 414 F.3d 1094, 1118-19 (9th Cir. 2005), *rev'd on other grounds sub nom. Ayers v. Belmontes*, 127 S. Ct. 469 (2006), the court found a waiver of a conflict invalid when neither the defendant's attorney nor the trial judge explained that defendant's counsel owed a continuing duty of loyalty to his former client and that this conflict could impair counsel's ability to put on a defense.

When the defendant does not waive a potential conflict arising from successive representation, it may become an actual conflict requiring reversal of any conviction obtained. *See United States v. Elliot*, 463 F.3d at 865. Reversal may result if the defendant shows "that an actual conflict of interest adversely affected his lawyer's performance." *United States v. Crespo de Llano*, 830 F.2d 1532, 1540 (9th Cir. 1987), *see Mickens v. Taylor*, 535 U.S. 162 at 174 (in

1    successive representation case, "it was at least necessary, to void the conviction, for petitioner to

2    establish that the conflict of interest adversely affected his counsel's performance").

3        Linda Ashiegbu's declaration states that Mr. Vaughns was representing her during the

4    investigation of this case.  Further, Mr. Vaughns appears to be a witness to events relevant to this

5    motion.  The decision by Andrew Ashiegbu to join in Linda Ashiegbu's motion, which states

6    that Mr. Vaughns was then representing both Linda and Andrew Ashiegbu, highlights the

7    dangers of the potential conflict in this case.  In addition, in Mr. Vaughns's letter of June 5,

8    2007, Mr. Vaughns states that "Ms. Mays is unable to attend the scheduled interview on June 6,

9    2007 . . . due to continuing health concerns."  (Letter of Phil Vaughns, Attached as Exhibit A to

10   Brown Declaration.)  Ms. Mays is, in fact, the victim of the marriage fraud which underlies the

11   charges in the indictment against Linda Ashiegbu and Emmanuel Anyanwu and was not ill on

12   that date.  Accordingly, Mr. Vaughns's representation is "substantially related" to the

13   prosecution of Linda Ashiegbu and could give rise to a conflict.  *See Shwayder*, 312 F.3d at

14   1118.  In addition, Mr. Vaughns owes an ongoing duty of loyalty to his former clients and could

15   have obtained relevant privileged information from them.  Indeed, as noted, California courts

16   interpreting the California Rule of Professional Conduct 3-310(E) presume that an attorney

17   learned relevant confidential information during a substantially related prior representation.[2]

18       Under applicable Ninth Circuit decisions, Andrew Ashiegbu may waive any conflict

19   arising from his attorney's prior representation of witnesses and potential witnesses in this case.

20   If Andrew Ashiegbu is willing to execute a waiver, the government submits that it should be in

21   writing, and that the Court should personally inquire of Andrew Ashiegbu whether he

22   understands what he is waiving and the practical consequences of that waiver.  In particular, the

23   government submits that before waiving his right to conflict-free counsel, Andrew Ashiegbu

24   _____

25       [2]  The California Rules of Professional Conduct impose an obligation on an attorney
     accepting the representation of a client in a matter that would be substantially affected by a prior
26   representation to (1) provide written disclosure to the new client; and (2) if the attorney has
     obtained confidential information from the prior client, obtain the informed written consent of
27   the prior client.  Because those obligations pertain to the attorneys' ethical duties, not the
     requirements of the Sixth Amendment, the government does not ask this Court to enforce them.
28

should be informed that his attorney owes a continuing duty of loyalty to his former clients, that they may possess confidential information from his representation of those clients, and that his duty of loyalty to their former clients may impede his ability to represent Andrew Ashiegbu.

If Andrew Ashiegbu declines to waive the potential conflicts, the government respectfully submits that the Court should hold a hearing to determine whether Mr. Vaughns's prior representation of witnesses and defendants in this investigation is likely to give rise to an actual conflict as the case progresses. *See United States v. Lewis*, 520 F.2d at 1265 (counsel can demonstrate absence of conflict by explaining scope of prior representation).

## V.    THE JUNE 6, 2007 SEARCH COMPLIED WITH RULE 41 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

Linda Ashiegbu's motion argues that this Court should suppress evidence seized on June 6, 2007, because of a purported failure to comply with Fed. R. Crim. Pro. 41(f)(1)(C). In particular, Linda Ashiegbu claims that the search was deficient because neither she nor Andrew Ashiegbu was provided with a copy of the search warrant prior to execution of the search warrant and that, therefore, items seized in the search warrant should be suppressed. As Linda Ashiegbu notes, her characterization of the governing law flatly conflicts with the Supreme Court's statement in *Groh* that "it is true, as petitioner points out, that neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Groh v. Ramirez,* 540 U.S. 551, 562 n.5 (2004). Defendant's motion should be denied on this ground alone.

Even assuming Rule 41 were read to require service of the search warrant at the outset of a search, the agents in this case complied with that reading. In fact, Agent Rea provided a copy of the search warrant to either Linda or Andrew Ashiegbu as soon as the house had been cleared and prior to the search for the items enumerated in that warrant. (Rea Declaration ¶ 6.) Agent Rea's sworn statement to that effect is corroborated by the photograph taken by Agent Paul at 9:21 a.m.–just fifteen minutes after agents arrived at the house–which shows Linda and Andrew Ashiegbu in the sitting room. Both Linda and Andrew Ashiegbu appear to be handcuffed at that time, which is consistent with Agent Rea's declaration that Linda and Andrew were handcuffed

while the house was cleared.  In his Declaration, Agent Rea confirms that the white document in this photograph is a copy of the search warrant that he provided Linda and Andrew Ashiegbu prior to the execution of the search.  (Rea Declaration ¶ 7.).

## CONCLUSION

For the reasons set out above, this Court should deny Linda Ashiegbu's and Andrew Ashiegbu's motions to suppress statements and evidence.  Further, this Court should inquire into the potential conflict of interest posed by Mr. Vaughns's representation of Linda Ashiegbu, Andrew Ashiegbu, and Emmanuel Anyanwu.

DATED: May 28, 2008                    Respectfully submitted,

                                       JOSEPH P. RUSSONIELLO
                                       United States Attorney


                                       ALLISON MARSTON DANNER
                                       Assistant United States Attorney

USA'S OPP. TO MTN. TO SUPPRESS
[CR 07-0654 CRB]
[CR 07-0677 CRB]                    16